UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LEOPOLD WITHMORE-VANS
ALLEN, JR.,

                Petitioner,

v.

SHERRY L. BURT,

                Respondent.

_____/

Case No. 1:20-cv-7

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.   Petitioner Leopold Withmore-Vans Allen, Jr. is incarcerated with the Michigan Department of Corrections at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.   On September 23, 2016, following a five-day jury trial in the Kent County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of larceny from the person, in violation of Mich. Comp. Laws § 750.357.   On October 18, 2016, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 20 to 40 years on each CSC-I count and two to ten years on the larceny count.

On December 30, 2019, Petitioner timely filed his habeas corpus petition raising one ground for relief, as follows:

I.    Petitioner was denied his Sixth Amendment right to effective assistance of counsel where defense [counsel] failed to challenge a biased juror for cause, thus violating his due process right to a[n] impartial jury.

(Pet., ECF No. 1, PageID.6.)  Respondent has filed an answer to the petition (ECF No. 11) stating that the petition should be denied because it lacks merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the Petitioner's ineffective assistance of counsel claim is meritless.  Accordingly, I recommend that the petition be denied.  Moreover, I recommend that the Court deny Petitioner's motion to raise new evidence in the trial court (ECF No. 13), which the undersigned construes as a motion for stay pending Petitioner's attempt to exhaust new issues in the state courts.

## Discussion

## I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's CSC convictions as follows:

> Allen's convictions arose out of the sexual assault of his former girlfriend, JH.  At the time of the assault, JH was approximately 26 weeks pregnant with Allen's child.   At trial, JH testified that Allen entered her home late in the evening on January 3, 2016, when she was asleep.  JH awoke to Allen standing in her bedroom and rummaging through her belongings.  Allen took a can of mace from JH's keychain. He pinned JH to the bed.  He shook the can of mace, pointed it at her face, and threatened to spray her with the mace if she did not tell him what she had been doing, suggesting that she was cheating on him even

2

though JH ended the relationship.  Allen tried to force JH to perform fellatio on him, but JH refused.  Allen forcibly removed JH's clothing, performed cunnilingus on her, and penetrated her vagina with his penis. JH's roommate called the police after the assault, and the police took JH to the YWCA for an examination by a sexual assault nurse examiner. JH was then transferred to Spectrum Butterworth Hospital, where she was admitted and stayed for two days.

(Mich. Ct. App. Op., ECF No. 12-12, PageID.340.)   The court described the facts

underlying Petitioner's larceny conviction as follows:

[T]he evidence show[ed] that Allen physically forced JH to relinquish control of the phone so that he could take it.  After the assault, Allen took JH's cell phone, forced JH to unlock the phone, and started reading her text messages.  JH then grabbed the phone from Allen's hand and ran to the stairway.  Allen grabbed JH by the hair and "yanked" her head back in an attempt to get the phone back.  JH threw the phone downstairs and went down to the basement to alert her roommate.  Allen later retrieved JH's cell phone and left with it.  JH's testimony shows that Allen used violence or fear to force JH to relinquish control of the phone and to gain access to the phone.

(*Id.*, PageID.343.)   The facts reported by the court of appeals are not challenged in

the habeas petition.  Instead, Petitioner's challenge focuses on the *voir dire* process.

During *voir dire*, Petitioner's counsel asked the jurors the following:

[The prosecutor] asked  . . . whether you were a victim, but  . . . I'm going to broaden the relationship a little bit and ask if there's a family member or a close friend that may have been a victim of a crime?

(Trial Tr. I, ECF No. 12-6, PageID.194.)   Prospective Juror Burke responded in the

affirmative.  That prompted the following exchange:

Ms. Bryant: Okay.  Anything about that relationship to that person that's going to affect your ability to sit as a fair and impartial juror in this case?

Juror Burke:It was my daughter, but it will not affect me.

3

> Ms. Bryant:  Anything of this nature or type?
>
> Juror Burke: Yes.
>
> Ms. Bryant:  Okay.  Then I'm going to ask a little bit more.  How long ago?
>
> Juror Burke: It was about five years ago.
>
> Ms. Bryant:  And being of this type, did it go to court?
>
> Juror Burke: It did not go to court.
>
> Ms. Bryant:  So it was something that was dealt with in the family?
>
> Juror Burke: It was not reported.
>
> Ms. Bryant:  All right.  But you don't think it would affect your ability in this case?
>
> Juror Burke: No, I do not.

(*Id*.)

Thereafter, Juror Burke indicated that he would not have a problem judging the credibility of another person (*Id*., PageID.195), that there was nothing in his background, upbringing, or belief system that he thought would affect his ability to sit as a fair and impartial juror (*Id*., PageID.196), and that he would hold the prosecutor to her burden of proof (*Id*., PageID.191).  Burke indicated he had no strong feelings that would interfere with his being a fair and impartial juror.  (*Id*., PageID.193.)  Moreover, he claimed that there was no reason whatsoever that he would not be a fair and impartial juror in the case.  (*Id*., PageID.194.)  He also swore, with the rest of the jurors, that he would perform his duty to decide the questions submitted justly, render a true verdict, and render that verdict based only on the

4

evidence introduced and in accordance with the court's instructions.  (Trial Tr. II, ECF No. 12-7, PageID.208.)[1]

Petitioner appealed his convictions and sentence to the Michigan Court of Appeals.  In the brief Petitioner filed with the assistance of counsel, he raised four issues: erroneous admission of hearsay, ineffective assistance of counsel for failure to object to the hearsay, insufficient evidence of larceny, and improper scoring of an offense variable under the sentencing guidelines. (Pet'r's Appeal Br., ECF No. 12-12, PageID.411.)  Petitioner filed a motion to remand to the trial court so that he could file a motion for new trial, file a motion to correct sentence, and request an evidentiary *Ginther* hearing.[2]  The court denied Petitioner's motion to remand. (Mich. Ct. App. Order, ECF No. 12-12, PageID.364.)

---

[1] Those brief exchanges were not the only information that counsel knew about Juror Burke, in addition to the information he revealed in his jury questionnaire, he also indicated that he was married, he worked for the State of Michigan in Ionia County as a Child Protective Services investigator, and he had been in the military.  (Trial Tr. I, ECF No. 12-6, PageID.185.)  He stated that his work as an investigator would not affect him if he were selected as a juror.  (*Id*.)  Burke indicated that he had never had contact with the criminal justice system as a victim, witness, or defendant, and he had never been charged with a crime.  (*Id*., PageID.189.)  He indicated he had never been involved with a domestic violence situation involving the police and that he had never had a truly negative experience with law enforcement. (*Id*., PageID.189-190.)  Juror Burke reported that he had worked for three years with juveniles at the Kent County Detention Center and that he visited county jails and state prisons as part of his present job.  (*Id*., PageID.190.)

[2] In *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), the Michigan Supreme Court approved the process of remanding to the trial court for an evidentiary hearing when an appellant has raised claims of ineffective assistance of counsel that require development of a record.

5

Petitioner's appellate counsel withdrew after the brief was filed.  The court appointed new counsel.

Petitioner's new counsel filed a supplemental brief raising an issue regarding court costs.  (Pet'r's Supp. Br., ECF No. 12-12, PageID.510.)  Petitioner also filed a supplemental *pro per* brief raising two additional issues: prosecutorial misconduct and ineffective assistance of counsel for failure to challenge a biased juror for cause. (Pet'rs Supp. *Pro Per* Br., ECF No. 12-12, PageID.483.)  Petitioner sought a remand to the trial court for a *Ginther* hearing regarding his new ineffective assistance claim. (Pet'r's Pro Per Mot. to Remand, ECF No. 12-12, PageID.471-473.)  The court denied Petitioner's second motion to remand.  (Mich. Ct. App. Order, ECF No. 12-12, PageID.370.)

By unpublished opinion issued March 13, 2018, the Michigan Court of Appeals, rejected Petitioner's appellate claims, with one exception.[3]  (Mich. Ct. App. Op., ECF No. 12-12, PageID.340-346.)  With regard to Petitioner's ineffective assistance claim based on *voir dire*, the court stated:

> Allen argues that defense counsel rendered ineffective assistance at trial.  Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law.  *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  We review a trial court's findings of fact for clear error and constitutional issues de novo. *Id.*  In the absence of an evidentiary hearing, as in this case, this Court's review is limited to mistakes apparent on the record. See *People v Horn*,

---

[3] The court of appeals agreed with Petitioner that the trial court had failed to set forth a factual basis so support the $400.00 in court costs imposed at sentencing.  (Mich. Ct. App. Op., ECF No. 12-12, PageID.344.)  The appellate court remanded to the trial court to establish that factual basis.  (*Id.*)

279 Mich App 31, 38; 755 NW2d 212 (2008).  To establish ineffective
assistance of counsel, a defendant must show (1) that counsel rendered
assistance that "fell below an objective standard of reasonableness[,]"
and (2) a "reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different. . . ."
*People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000) (quotation
marks and citation omitted).

*   *   *

Allen further argues that defense counsel was ineffective during voir
dire by failing to challenge for cause a juror who stated that his daughter
was previously the victim of a similar crime.  "Jurors are presumptively
competent and impartial, and the party alleging the disqualification
bears the burden of proving its existence."  *People v Johnson*, 245 Mich
App 243, 256; 631 NW2d 1(2001).  "It is sufficient if the juror can lay
aside his impression or opinion and render a verdict based on the
evidence presented in court."  *Irvin v Dowd*, 366 US 717, 723; 81 S Ct
1639; 6 L Ed 2d 751 (1961).  Moreover, "an attorney's decisions relating
to the selection of jurors generally involve matters of trial strategy,
which we normally decline to evaluate with the benefit of hindsight."
*Johnson*, 245 Mich App at 259 (citations omitted).

Allen has failed to overcome the presumption that defense counsel's
decision was a product of effective trial strategy.  The record does not
show that the juror was biased or unable to follow the trial court's
instructions regarding the presumption of innocence and the
prosecution's burden of proof.  Although the juror agreed that his
daughter was the victim of a similar type of crime, he indicated that the
incident would not impact his ability to be a fair and impartial juror.  He
also indicated that he did not have strong feelings about sexual assault
that would impact his ability to be fair and impartial.  On this record,
Allen has failed to show that counsel's performance during voir dire fell
below an objective standard of reasonableness.

(Mich. Ct. App. Op., ECF No. 12-12, PageID.342-343.)    Petitioner sought

reconsideration of the ineffective assistance of counsel issue relating to allowing the

admission of hearsay evidence.  (Pet'r's Mot. for Recons., ECF No. 12-12, PageID.374.)

The court denied relief by order entered April 11, 2018.  (Mich. Ct. App. Order, ECF No. 12-12, PageID.404.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the six issues for which the court of appeals had denied relief. (Pet'r's Appl. for Leave to Appeal, ECF No. 12-13, PageID.553-584.)  The supreme court denied leave by order entered October 2, 2018.  (Mich. Order, ECF No. 12-13, PageID.550.)  Petitioner then filed his single-issue habeas petition on December 30, 2019.

On February 13, 2020, the Court ordered Respondent to answer the petition within 180 days.  (ECF No. 7.)  On April 27, 2020, Petitioner filed a motion for stay. (ECF No. 9.)  In Petitioner's motion for stay, he reported that he had recently discovered that his trial attorney misrepresented a plea deal offered by prosecutor. According to Petitioner, counsel communicated an offer to plead to CSC-I.  Petitioner now claims that the preliminary examination transcript shows that the plea deal was actually for CSC-III.  Petitioner claims further that his mother overheard a conversation between the prosecutor and defense counsel after the jury's deliberation wherein the prosecutor suggested that Petitioner should have accepted the CSC-III plea deal offered at the preliminary examination.

Petitioner asked for a stay and asked the Court to hold this matter in abeyance while he pursued this new ineffective assistance of counsel claim by way of a motion for relief from judgment in the trial court.  The Court indicated its intention to grant

8

the stay, and hold this matter in abeyance, conditioned on Petitioner's compliance with the following instructions:

> Within thirty days of this Order, Petitioner must return to state court to exhaust his state court remedies with respect to the unexhausted claim(s) identified in the present motion.  Within thirty days of this Order, Petitioner must submit to this Court an affidavit setting forth the date on which he submitted a pleading seeking relief in the state court and the claim(s) raised in such pleading.  If Petitioner fails to file this affidavit within the time provided, the Court will not stay the present matter, but will instead address his petition as originally filed. Upon receipt of Petitioner's affidavit, the Court will stay this matter and administratively close this case.  Once Petitioner has exhausted his state court remedies, he must file a motion to re-open this case and amend his petition, including a proposed amended petition, with this Court within thirty days of the final decision by the Michigan Supreme Court.

(Order, ECF No. 10, PageID.74.)  Petitioner did not file an affidavit within thirty days of the date of the order.[4]  Accordingly, the Court did not stay this matter, or hold it in abeyance, and the petition is properly addressed now as originally filed.

Respondent filed her answer and the state court record on August 11, 2020. Petitioner did not file a timely reply.  Nonetheless, on December 7, 2020, Petitioner filed a new motion seeking a stay based on the alleged discovery of new evidence. (ECF No. 13.)  That motion is addressed below.

---

[4] Petitioner has still not filed the affidavit, even five months later, despite the fact that the Kent County Circuit Court docket indicates that he filed a motion for relief from judgment on August 4, 2020, and the trial court denied it on August 17, 2020.

9

## II.  Motion to raise new evidence in the trial court (ECF No. 13)

On December 7, 2010, Petitioner filed a "motion to raise new evidence in the trial court."  According to the motion, during November of 2020, Petitioner received a response to a Freedom of Information Act (FOIA) request made on Petitioner's behalf by an organization called Humanity for Prisoners.  (Nov. 20, 2020 Corr., ECF No. 13-1, PageID.695.)  The response included Michigan State Police lab reports regarding the DNA evidence in Petitioner's case.  (ECF Nos. 13-2, 13-3.)

Those reports, however, based on their content, are part of the package of exhibits from the Michigan State Police lab that were introduced at trial through the testimony of forensic scientist Joel Schultze.  (Trial Tr. III, ECF No. 12-8, PageID.268-276.)  Thus, they do not appear to be "new evidence" at all.  Moreover, the reports simply confirm that Petitioner's sperm was found in the vaginal swab taken from the victim.  That was hardly surprising.  Petitioner did not deny having vaginal intercourse with the victim; he simply claimed it was consensual.

Yet, Petitioner claims the reports "support his claim of being actually innocent of [the] offense."  (Pet'r's Mot., ECF No. 13, PageID.692.)  They do not.  Witness Schultze's testimony shows that these records do not demonstrate Petitioner's innocence.  They merely confirm that Petitioner and the victim had vaginal intercourse, a fact that Petitioner acknowledged in his post-arrest police interviews.

Moreover, because the evidence is not new, Petitioner cannot show that his claim is timely.   Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).   Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> (A)      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.  Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   28 U.S.C.

§ 2244(d)(1)(A).  Petitioner appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court denied his application on October 2, 2018.  Petitioner did not petition for certiorari to the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.)  The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired.  *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The ninety-day period expired on December 31, 2018.

Petitioner had one year from December 31, 2018, until December 31, 2019, to file his habeas application.  Petitioner filed his application on December 30, 2019, with one day left in the period of limitation.  The petition, as filed, was timely; but that filing did not toll the period of limitation with regard to other issues not raised in the petition.  *See Duncan v. Walker*, 533 U.S. 167, 181-182 (2001) (court held that an application for federal habeas corpus review did not toll the limitation period).  Therefore, the period of limitation expired shortly after Petitioner filed his petition.  Petitioner's motion that raises issues regarding the DNA reports, filed eleven months after the period of limitation expired, is untimely.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Petitioner does not indicate that he is entitled to statutory tolling.

The one-year limitations period applicable to § 2254 is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly." *See, e.g., Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011), *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case. The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations does not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing."); *Allen*, 366 F.3d at 403 ("'[I]gnorance of the law alone is not sufficient to warrant equitable tolling.'") (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)). Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner.]'"  *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327 (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 399-400.

In the instant case, although Petitioner baldly claims that he is actually innocent, he proffers no new evidence of his innocence, much less evidence that makes it more likely than not that no reasonable juror would have convicted him.  *Schlup*, 513 U.S. at 327, 329.  Because Petitioner has wholly failed to provide evidence of his actual innocence, he would not be excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).  His new habeas issue therefore appears to be time-barred.

The merits and timeliness are of Petitioner's new claim are relevant to his request for a stay.  Under *Rhines v. Weber*, 544 U.S. 269 (2005), such a stay for the purposes of allowing exhaustion of state court remedies should only be granted if

(1) there is good cause for Petitioner's failure to exhaust his claims first in state court, (2) the unexhausted claims are not plainly meritless, and (3) there is no indication that Petitioner has engaged in abusive or dilatory litigation tactics. *Id.* at 277-78. Here, however, the unexhausted claims appear to be without merit and untimely. Moreover, because the "new evidence" upon which Petitioner relies is not new at all, but was introduced at trial, there is no good cause for Petitioner's failure to exhaust the claim on direct appeal. Accordingly, Petitioner has failed to satisfy the *Rhines* requirements and his motion for stay should be denied.[5]

## III.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable

---

[5] Denying a stay does not preclude Petitioner from seeking relief in the state court. If, as Petitioner claims, the reports are "new evidence," Petitioner's period of limitation with regard to that claim will commence upon the date a duly diligent petitioner would have discovered the evidence, 28 U.S.C. § 2244(d)(1)(D), and Petitioner's attempts to exhaust the claim through a motion for relief from judgment will toll the period of limitation, 28 U.S.C. § 2244(d)(2). Moreover, Petitioner's habeas petition filed after exhausting his state court remedies would not be barred as second or successive if, indeed, "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence[.]" 28 U.S.C. § 2244(b)(2).

determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).   Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

 A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).   In other words, "where the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."   *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.   *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).   A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.   This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546-547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## IV.   Ineffective assistance of counsel during *voir dire*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.  The state court applied the *Strickland* standard when rejecting Petitioner's ineffective assistance claims.   (Berrien Cnty. Cir. Ct. Order, ECF No. 6-21, PageID.1099-1100.)

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

18

Although the Michigan Court of Appeals cited state authority to support the standard it applied to resolve Petitioner's ineffective assistance of counsel claim, the case it cited, *People v. Toma*, 613 N.W.2d 694, 703-704 (Mich. 2000), expressly relied upon *Strickland* for the standard.  The standard applied in Petitioner's case, therefore, is the proper standard under clearly established federal law.  The issue that remains is whether the court of appeals applied the standard reasonably.

Petitioner raises only one issue, but it is made of two distinct, but related, layers:  the effectiveness of counsel's assistance and the merits of Petitioner's biased juror claim.  Where the effectiveness of counsel's assistance is challenged because counsel chose to forego a particular issue, the ineffective assistance claim necessarily fails if the underlying issue or argument had no merit.   "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Thus, if Petitioner's assertion that Juror Burke was biased has no merit, Petitioner's ineffective assistance claim fails as well.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . and to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  The right to an impartial jury is applicable to the states via the Fourteenth Amendment.  *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  Further, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must

19

stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted).

"The *voir dire* is designed 'to protect [this right] by exposing possible biases, both known and unknown, on the part of potential jurors.'" *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984)). *Voir dire* plays an important role in ensuring the impartiality of the jury selected:

> It is true that "[*v*]*oir dire* 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'" *Ristaino v. Ross*, 424 U.S. 589, 594 (1976) (quoting *Connors v. United States*, 158 U.S. 408, 413 (1895)). The Constitution, after all, does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury. Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors. *Dennis v. United States*, 339 U.S. 162, 171-172 (1950); *Morford v. United States*, 339 U.S. 258, 259 (1950). "*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (plurality opinion). Hence, "[t]he exercise of [the trial court's] discretion, and the restriction upon inquiries at the request of counsel, [are] subject to the essential demands of fairness." *Aldridge v. United States*, 283 U.S. 308, 310 (1931).

*Morgan v. Illinois*, 504 U.S. 719, 729-730 (1992) (parallel citations and footnote omitted).

It is well-established that jurors are presumed to be impartial. *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing *Irvin*, 366 U.S. at 723). When a juror's impartiality is called into question, the relevant issue is "'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence,

20

and should the juror's protestation of impartiality be believed.'" *Dennis*, 354 F.3d at

520 (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)); *see also Miller v. Webb*,

385 F.3d 666, 673 (6th Cir. 2004).  The trial court must determine whether the juror

demonstrates "actual bias," that is, "the existence of a state of mind that leads to an

inference that the person will not act with entire impartiality." *Miller*, 385 F.3d at

673 (internal quotations omitted).  "A juror's express doubt as to her own impartiality

on *voir dire* does not necessarily entail a finding of actual bias.  The Supreme Court

has upheld the impaneling of jurors who had doubted, or disclaimed outright, their

own impartiality on *voir dire*." *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir.

2001) (citing *Patton*, 467 U.S. at 1032).  "It is sufficient if the juror can lay aside his

impression or opinion and render a verdict based on the evidence presented in court."

*Irvin*, 366 U.S. at 723.  In evaluating the juror's ability to lay aside partiality, the

Sixth Circuit has identified a number of important factors, including the following:

"'the juror's own estimation of the relevance of [the information giving rise to her

partiality]; any express indications of partiality by [the] juror . . . and the steps taken

by the trial court in neutralizing this information.'" *Hughes*, 258 F.3d at 459 (quoting

*Gall v. Parker*, 231 F.3d 265, 308 (6th Cir. 2000)).

     The question of bias of an individual juror at a state criminal trial is one of

fact. *Dennis,* 354 F.3d at 520 (citing *Patton,* 467 U.S. at 1036); *see also Sizemore v.*

*Fletcher,* 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209,

218 (1982)).  Petitioner bears the burden to establish the existence of juror bias which

caused him to suffer actual prejudice. *See Smith*, 455 U.S. at 215-17 (petitioner bears

the burden to demonstrate that he suffered "actual bias" as a result of juror misconduct); *United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000); *Sheppard v. Bagley*, 657 F.3d 338, 348-49 (6th Cir. 2011) (Batchelder, J. concurring).

The court of appeals determined that the record did not support Petitioner's conclusory claim that Juror Burke was biased:

> The record does not show that the juror was biased or unable to follow the trial court's instructions regarding the presumption of innocence and the prosecution's burden of proof.  Although the juror agreed that his daughter was the victim of a similar type of crime, he indicated that the incident would not impact his ability to be a fair and impartial juror.  He also indicated that he did not have strong feelings about sexual assault that would impact his ability to be fair and impartial.

(Mich. Ct. App. Op., ECF No. 12-12, Page.ID.342-343.)  Those factual determinations are presumed to be correct.  28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656; *Sumner*, 449 U.S. at 546-547; *Smith*, 888 F.2d at 407 n.4.  Moreover, as set forth in detail above, the factual determinations are well-grounded in the record.

To overcome the presumption, Petitioner must present clear and convincing evidence to the contrary.  He has not.  He only returns to the fact that Juror Burke's daughter had been the victim of a similar crime 5 years earlier.  He does not address the juror's rehabilitative responses to the questions posed by the trial court and counsel.  It may be debatable whether Juror Burke was biased, but it is certainly not unreasonable to conclude that he was not biased based on his responses to the other questions asked by the court and counsel and based upon his oath.  That ends the analysis. *Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[I]f 'reasonable minds reviewing

the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'").

Because Petitioner failed to demonstrate that Juror Burke was biased, the court of appeals determined that Petitioner had also "failed to show that counsel's performance during voir dire fell below an objective standard of reasonableness." (Mich. Ct. App. Op., ECF No. 12-12, PageID.343.)[6]   That determination is a reasonable application of *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

## **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined Petitioner's claim under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that

---

[6] The determination that the record did not show Juror Burke was biased also suggests that Petitioner suffered no prejudice as a result of counsel's failure to challenge Burke for cause.  The court of appeals did not address the prejudice prong of *Strickland*.

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claim would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that Petitioner's motion to raise new evidence in the trial court, construed as a motion for stay (ECF No. 13), and the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Date: December 28, 2020 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).